**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 02:20 PM August 1, 2013**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| NATALIE MICHELLE BOOK, | ) | CASE NO. 11-62686 |
| | ) | |
| Debtor. | ) | ADV. NO. 12-6031 |
| _____ | ) | |
| JOSIAH L. MASON, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| RAMONA A. CLARK, | ) | **(NOT FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |

Three motions are before the court: Defendant's motion for leave to amend her answer, her motion for partial summary judgment and the chapter 7 trustee's ("Trustee") motion for summary judgment. In his complaint, Trustee alleges that Debtor's prepetition conveyance of real estate to Defendant, her mother, was either a fraudulent or preferential transfer. Trustee seeks to recover the property for the benefit of the estate.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).

1

This opinion is not intended for publication or citation.   The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Defendant is Debtor's mother.   In 1989, Defendants' parents, Mr. and Mrs. Briggs, conveyed their interests in the real estate located at 1822 Rock Road, Mansfield, Ohio to Defendant and Debtor, giving each a one-half interest in the property.   The Briggs' retained life estates in the property.

Mrs. Briggs died in 1994.

In 2005, Defendant borrowed $41,200 from GMAC and pledged her interest in the property as security.   The mortgage is signed by Defendant alone.   From the loan proceeds, Defendant paid Debtor $35,000 for Debtor's interest in the property.   A deed was not executed or recorded at the time Defendant purchased the property.   The balance of the loan proceeds were used by Defendant personally to make improvements to the property.

Defendant has made all the mortgage payments, paid all real estate taxes and insurance, and covered the costs of improvements and repairs on the property.

Mr. Briggs died in 2006.

In 2011, Debtor began exploring bankruptcy options.   When Defendant learned of the impending bankruptcy, the parties agreed to formally transfer Debtor's interest in the property to Defendant.   The deed was recorded on March 22, 2011.   Defendant obtained an appraisal that values the entire property at $60,000 at the time of the transfer in 2011.   (Def.'s Mot. Summ. J Ex. 4, ECF No. 31-6)   Debtor's interest at the time of transfer was worth $30,000.

Debtor filed a chapter 7 bankruptcy petition on August 17, 2011.   Trustee filed a complaint to avoid the transfer to Defendant and recover the property for the benefit of the bankruptcy estate.

## LAW AND ANALYSIS

The motions for summary judgment are made under Federal Rule of Bankruptcy Procedure 7056, the bankruptcy complement to Federal Rule of Civil Procedure 56.   To succeed on summary judgment, Rules 7056 requires the movant to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Bankr. Pro. 7056.   All evidence, facts and inferences are viewed in the light most favorable to the nonmoving party.   Superior Bank v. Boyd (In re Lewis), 398 F.3d 735 (6th Cir. 2005) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).

Three motions are before the court:   Defendant's motion for summary judgment,

Plaintiff's cross-motion for partial summary judgment, and Defendant's motion to amend her answer. The court will consider Defendant's motion to amend her answer first.

## I.     Defendant's Motion to Amend Answer

On May 24, 2013, Defendant filed a motion for leave to amend her answer to add a new defense. She relies on Federal Rule of Civil Procedure 15(a)(2), as incorporated by Federal Rule of Bankruptcy Procedure 7015, for the relief sought. When a party is not able to amend as a matter of right, as set forth in Rule 15(a)(1), Rule 15(a)(2) permits amendments "with the opposing party's written consent or the court's leave." A court is instructed to grant leave "freely . . . when justice so requires." However, leave can be denied in the face of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.' Marquette Gen. Hosp. v. Excalibur Med. Imaging, LLC, 2013 WL 2378562 *2 (6th Cir. 2013) (unpublished) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Defendant contends that in researching the issues presented in Trustee's motion for summary judgment, she identified a possible defense that was not included in her answer. She says that the transfer of the real estate should be considered a sale, not a loan, creating a defense of equitable title.

Plaintiff's complaint was initially filed on April 12, 2012 and amended on November 30, 2012. Defendant filed her answer to the amended complaint on December 7, 2012. Since that time, the parties have engaged in discovery and filed the instant motions. Nearly two months after discovery closed, and over five months since filing her answer, Defendant now seeks leave to amend it. Obviously, there is some delay but the court cannot conclude that it is so unreasonable as to be "undue." There is no evidence of bad faith in the request and this appears to be Defendant's first request for amendment.

What is problematic is the timing of the request. If leave is granted, the court would need to table the pending motions for summary judgment and ask Plaintiff to re-start its approach to this case to allow for Defendant's new theory. Considering Plaintiff has prepared and presented its motion for summary judgment, and responded to Defendant's, there is clearly prejudice to Plaintiff because the defense may nullify Plaintiff's progress to date. Under these circumstances, the court cannot conclude that justice requires this result. Consequently, the motion will be denied. However, denial is without prejudice for re-filing. If the case proceeds further than summary judgment, the court will give Defendant twenty-one days to file an amended answer.

## II.     Motions for Summary Judgment

Review of the motions shows that it may be easier to tackle the motions from an issue-based standpoint rather than look at each motion individually. This is, in part, due to the fact that several pleadings may address the same issue. The court will take a comprehensive view

3

of the pleadings in considering the parties' arguments.

## A. Counts pled in the amended complaint

Defendant argues that Trustee did not plead a count for fraudulent transfer under 11 U.S.C. § 548(a)(1)(A), for actual fraud, only (a)(1)(B), for constructive fraud. *See* Lyon v. Rappaport (In re Classicstar, LLC), 2011 WL 652744 (B.A.P. 6th Cir. 2011). Consequently, she decries any attempt to now pursue a claim under § 548(a)(1)(A). Upon review of the complaint, the court agrees with Defendant.

Count I of the complaint blandly references § 548. Paragraphs three and four contain fraudulent transfer allegations. Under paragraph three, Plaintiff identifies the date of the transfer, the property transferred, the lack of consideration in the transfer, and Debtor's insolvency. Paragraph four states a value for the property transferred. These allegations clearly outline a case for constructive fraud under § 548(a)(1)(B) which states

> The trustee may avoid any transfer . . . of an interest of
> the debtor in property . . . that was made or incurred on
> or within 2 years before the date of the filing of the peti-
> tion, if the debtor voluntarily or involuntarily –
>
> \*     \*     \*
>
> (B)(i)   received less than a reasonably equivalent value
>           in exchange for such transfer or obligation; and
>
>      (ii) (I) was insolvent on the date that such transfer was
>             made or such obligation was incurred, or became
>             insolvent as a result of such transfer or obligation.

The same doesn't hold true for a count under 11 U.S.C. § 548(a)(1)(A). A claim for actual fraud requires proof of actual fraudulent intent. *See, e.g.,* Sicherman v. Mackin (In re Schohl), 2006 WL 753096 \*3-4 (N.D. Ohio 2006). Trustee did raise any allegations concerning Debtor's intent, either directly or through reliance on circumstantial evidence, such as the badges of fraud. Defendant was therefore not on notice of this count. As a result, the court finds that Plaintiff did not state a claim for a fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

Similarly, the court finds, for the first time, mention of a fraudulent transfer claim under state law in Plaintiff's motion for summary judgment. (Pl.'s Mot. Summ. J., p. 15, ECF No. 32) At no point in the amended complaint did Plaintiff raise this claim. To allow him to raise it now would be manifestly unfair to Defendant. Consequently, the court will only consider a count for constructive fraud under 11 U.S.C. § 548(a)(1)(B).

4

## B. Reasonably equivalent value

One of the elements of a constructive fraud claim is proof that the debtor received less than reasonably equivalent value for the transfer.   Defendant contends that Debtor's transfer of the property was for reasonably equivalent value, thereby defeating Trustee's claim.   Defendant paid $35,000 to Debtor.   At the time the property was transferred to Defendant, it was valued at $30,000.   On these figures, the benefit in the transaction tilts in Debtor's favor:   she received more than she gave, especially if the time value of money is factored.   A comparison of the of the property transferred to the value of the property received is the standard benchmark for determining whether a transfer was made for reasonably equivalent value.   Corzin v. Fordu (In re Fordu), 201 F.3d 693, 707 (6th Cir. 1999) (citations omitted).   Its existence is generally a question of fact.   Southeast Waffles, LLC v. IRS (In re Southeast Waffles, LLC), 460 B.R. 132, 139 (B.A.P. 6th Cir. 2011) (citations omitted).   The date of the transfer is the operative date.   Id. (citation omitted).

What Plaintiff takes issue with is the timing of the transfer, suggesting that waiting six years to satisfy the debt destroys the existence of reasonably equivalent value.   Trustee did not offer any convincing support for his claim.

First, he cites In re Kelley, 7 B.R. 384 (Bankr. S.D. 1980).   In Kelley, Defendants lent Debtors $10,000 on January 11, 1979.   Debtors signed a mortgage on the same date, but Defendants did not record the mortgage until April 3, 1979.   Debtors argued that no new consideration supported the April 3, 1979 transfer, providing a basis for avoidance of the mortgage.   The court disagreed, finding a contemporaneous exchange, and noting "value can be the securing of a present or antecedent debt of the debtor."   Kelley at 388; *see also* 11 U.S.C. § 548(d)(2)(A).   Although the Kelley court suggested that the perfection of a security interest on an antecedent debt could be a fraudulent transfer, it did so on the assumption that "all the other elements exist."   Its musings on this point are merely dicta.

Trustee also relies on Murphy v. Meritor Savings Bank (In re O'Day Corp.), 126 B.R. 370, 409-10 (Bankr. D. Mass. 1991).   The facts of O'Day Corp. are significantly more complicated, to no benefit for Trustee.   The creditor provided credit facilities in connection with a prepetition leveraged buyout of the debtor in exchange for various security interests, including a June 16, 1988 mortgage securing 1987 loans.   The buyout left debtor with little cash to fund operations.   The trustee filed a fraudulent conveyance action to avoid the 1988 mortgage.   The creditor attempted to use Kelley to support the validity of the mortgage.   The court didn't acquiesce, agreeing with the trustee's "observation that [the creditor's] argument, not surprisingly, ignores the nature of the antecedent debt and the lack of fair consideration in securing it."   O'Day Corp. at 409.   The court had previously determined that debtor did not receive adequate consideration for the security interests given in 1987 and it refused to then say that the debt incurred by debtor could serve as value supporting the 1988 mortgage.   Id.   However, the court surmised that there were amounts owed to creditor that were not connected to the contaminated transfers which did secure the mortgage, so there was value that could support part of the amount owed creditor.

5

Finally, Trustee references <u>Official Creditors Comm. v. Minden Exch. Bank & Trust Co. (In re Craig)</u>, 92 B.R. 394 (Bankr. D. Neb. 1988). <u>Craig</u> is limited to a discussion of a fraudulent transfer under § 548(a)(1)(A), making it inapposite for Trustee's constructive fraud claim.

What Trustee fails to focus on are the individual elements of his fraudulent transfer claim, contrary to the approach advanced by <u>Kelley</u> and <u>O'Day Corp.</u>  He also specifically fails to counter Defendant's argument that the transfer was for reasonably equivalent value.  Further, Trustee intermingles elements of actual fraud with constructive fraud in his arguments.  Trustee has not persuaded the court that the length of the time between Defendant's payment of $35,000 to Debtor and Debtor's transfer of the property to Defendant affects whether the exchange was for reasonably equivalent value.  As a result, the court finds that Debtor's deed of property valued at $30,000 in 2011 was reasonably equivalent in value to the $35,000 transfer from Defendant to Debtor in 2005.  Since Trustee cannot establish this element of his claim under Count I, the court will grant summary judgment to Defendant under § 548(a)(1)(B).

## C.  Preferential transfer

Trustee also moves for summary judgment on his preference claim under 11 U.S.C. § 547. Under this provision,

> The trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>     (A)  the case were a case under chapter 7 of this title;
>     (B)  the transfer had not been made; and
>     (C)  such creditor received payment of such debt to the extent provision by the provisions of this title.

11 U.S.C. § 547(b).   The trustee bears the burden of proof on a preference claim.  <u>Triad Int'l Maint. Corp. v. Southern Air Transp., Inc. (In re Southern Air Transport, Inc.)</u>, 511 F.3d 526, 534 (6th Cir. 2007) (citation omitted).

6

Defendant challenges only the fifth element. She argues that, since she held the equitable interest in the property, the transfer did not result in her acquiring more than she would have received in a chapter 7 proceeding. The court rejects this theory in subsection (ii), below, rendering her argument meritless. The court finds that Trustee established the elements of a preference.

Defendant raises several defenses and claims that questions of fact exist in all the defenses, as follows.

### (i)     Equitable title

Defendant raises this defense for the first time in her response to Trustee's motion for summary judgment. The court has already discussed, in part I, *supra*, the prejudice to Trustee that will result if the court now considers this defense.

### (ii)     Trust theories

Defendant argues that Debtor, by accepting the $35,000 payment from her mother in 2005, "was in effect the trustee of a resulting trust in favor of Ramona Clark on said property, with daughter Natalie Book only holding bare legal title in trust for her mother, Ramona Clark." (Def.'s Br. in Opposition to Pl.'s Mot. Summ. J., p. 2, ECF No. 35) She also references a constructive trust in her response. Trustee recognizes Defendant is raising this argument for the first time but doesn't contest her ability to do so at this stage of the proceeding. Additionally, Trustee presents arguments countering Defendant's trust theories. The court will therefore consider the defense.

Express trusts and resulting trusts are two different creatures:

> Unlike the express trust, which arises from a transferor's manifestation of intention to create it, a resulting trust arises from an intention that is legally attributed to a transferor based on the nature of the transaction, rather than from manifested intent.

Drown v. Hill (In re Phillips), 437 B.R. 836, 843 (Bankr. S.D. Ohio 2010) (citing Restatement (Third) of Trusts, § 7 cmt. A (2003)).

To prove an express trust, Defendant needs to show

> (1) an explicit declaration of trust accompanied by an intention to create it, or circumstances which show . . . that a trust was intended to be created; (2) an actual conveyance or transfer of lawful, definite property or estate or interest, for a definite term, made by a person capable of making a transfer thereof; and (3)

7

a vesting of legal title presently in a person capable of holding
it . . . .

Gertz v. Doria, 63 Ohio App.3d 235 (Ohio App. 9 Dist. 1989) (citing First Nat'l Bank of
Cincinnati v. Tenney, 165 Ohio St. 513, 515-16 (1956)).   Defendant has not cited one fact that
supports a claim for an express trust.   There was no intention to create a trust, nor was there a
transfer of property to establish a trust res.   Thus, her reliance on In re Phillips, 437 B.R. 836
(Bankr. S.D. Ohio 2010), is misplaced.   This defense clearly fails.

     Constructive trusts and resulting trusts are types of equitable trusts.   A resulting trust is
defined as

> one which the court of equity declares to exist where the
> legal estate in property is transferred or acquired by one
> under facts and circumstances which indicate that the
> beneficial interest is not intended to be enjoyed by the
> holder of the legal title . . . . The device has historically
> been applied to three situations: (1) purchase-money trusts;
> (2) instances where an express trust does not exhaust the res
> given to the trustee; and (3) express trusts which fail, in whole
> or in part.

Rodgers v. Pahoundis, 178 Ohio App.3d 229 (Ohio App. 5 Dist. 2008) (citations omitted).
Rodgers further explains that a purchase-money arises 'when property is transferred to one person,
but the entire purchase price is paid by another."   Id. (citing Glick v. Dolin, 80 Ohio App.3d 592,
597 (Ohio App. 8th Dist. 1992) (other citations omitted)).   The court referenced two factors as
important in determining whether a purchase-money resulting trust exists:   (1) the source of the
purchase money and (2) the intended beneficiary of the property.   Id. (citing Cayten v. Cayten,
103 Ohio App.3d 354, 359 (Ohio App. 11th Dist. 1995)).

     The purchase money resulting trust concept does not fit squarely on these facts.   If
Defendant's payment of $35,000 is viewed as purchase money, there was no corresponding
transfer of property to impress the trust.   Debtor was deeded the one half interest from Mr. and
Mrs. Briggs and therefore was lawfully in possession of legal title. Defendant cannot succeed on a
resulting trust theory.

     A constructive trust is "utilized to prevent fraud and unjust enrichment."   Rodgers, 178
Ohio App.3d 229.   This type of equitable trust seems to fit the facts of this case.   "The basis of
the constructive trust is the unjust enrichment which would result if the person having the property
were permitted to retain it."   Id. (citing Bilovocki v. Marimberga, 62 Ohio App.2d 15 169, 171-72
(Ohio App. 8th Dist. 1979)).   "By imposing a constructive trust, a court orders a person who owns
the legal title to the property to hold or use the property for the benefit of another or to convey the
property to another to avoid unjust enrichment."   Id. (citation omitted).   There is definite appeal
in this theory because it would remedy Debtor's perceived wrong in her failure to timely transfer

8

the property.   The problem is that the Sixth Circuit disfavors imposition of a constructive trust by a bankruptcy court.   Poss v. Morris (In re Morris), 260 F.3d 654, 666 (6th Cir. 2001) (citing XL/Datacomp, Inc. v. Wilson (In re Omegas Grp., Inc.), 16 F.3d 1443, 1451 (6th Cir. 1994)). Allowing a bankruptcy court to impose a constructive trust over property that is otherwise available to creditors disrupts the bankruptcy's goal of ratable distribution.

In Morris, the Sixth Circuit recognized limited exceptions to the general rule against imposition of constructive trusts.   For example, a creditor may be granted relief from stay to pursue a prepetition state court action.   If that action results in a constructive trust, the court suggested that a bankruptcy court could recognize it.   Morris, 260 F.3d at 667 (citing In re Newpower, 233 F.3d 922, 936 (6th Cir. 2000)).   Morris presented another similar exception.   In Morris, the Sixth Circuit found that a constructive trust attached to the property prepetition because state courts found there was "an enforceable contract for conveyance of the property" in favor of Debtor and suggested that the creditor held only bare legal title, not the beneficial interest. Morris, 260 F.3d at 669.

The same situation does not arise here.   First, Defendant has not pursued any state court action on which this court can rely, nor upon which a constructive trust remedy can be premised. Gaymar Indus., Inc. v. FirstMerit Bank, NA, 311 Fed.Appx. 814 (6th Cir. 2009) (citing Morris, 260 F.3d at 668).   Second, this is clearly a situation that will upset the ratable distribution of the bankruptcy estate.   If the court imposes a constructive trust, this property will not be available for distribution.   The court therefore cannot impose a constructive trust as urged by Defendant.

### (iii)    Ordinary course of business defense

Section 547(c) offers statutory defenses to a preference action.   Under 547(c)(2), an otherwise preferential transfer is insulated from avoidance if it was made in the ordinary course of business based on either parties' relationship or industry norms.   Appalachian Oil Co., Inc. v. Virginia State Lottery Dep't, 2012 WL 4754675 (Bankr. E.D. Tenn. 2012).   The statute provides

> (2) to the extent that such transfer was in payment
>     of a debt incurred by the debtor in the ordinary
>     course of business or financial affairs of the debtor
>     and the transferee, and such transfer was—
>
>     (A) made in the ordinary course of business or
>         financial affairs of the debtor and the trans-
>         feree; or
>     (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).   The party advancing the defense bears the burden of proof by a preponderance of the evidence. 11 U.S.C. § 547(g); Frank v. Volvo Penta of the Americas, Inc. (In re Thompson Boat Co.), 173 F.3d 430 (6th Cir. 1999) (unpublished).

9

The determination of what is ordinary between the debtor and transferee under (A) is a subjective analysis while what is ordinary under (B) requires an objective review.   Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.), 957 F.2d 239, 244 (6th Cir. 1992).   To decide what qualifies as "ordinary," a court looks at a variety of factors, including "timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made." Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.), 888 F.2d 42, 45 (6th Cir. 1989) (citing In re White, 58 B.R. 266 (Bankr. E.D. Tenn. 1986)).   Even an isolated, single transaction may qualify as "ordinary."   Katz v. Wells (In re Wallace's Bookstores, Inc.), 316 B.R. 254, 264 (Bankr. E.D. Ky. 2004) (citation omitted); Gosch v. Burns (In re Finn), 909 F.2d 903, 908 (6th Cir. 1990).

Defendant accurately states that the inquiry is factual.   Waldschmidt v. Ranier (In re Fulghum Constr. Corp.), 872 F.2d 739, 743 (6th Cir. 1989) (citations omitted).   But a party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. 574, 586.   Summary judgment is appropriate when, "after an adequate time for discovery, [the nonmovant] 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"   Tolton v. Am. Biodyne, Inc., 854 F.Supp. 505, 509 (N.D. Ohio 1993) (citing   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).   Since Defendant bears the burden of the ordinary course defense, she must clear the initial hurdle.

Defendant argues that the reason Debtor did not transfer the deed contemporaneously with the $35,000 payment was because Debtor "was not living in Ohio . . . [s]he was on active duty in the Navy and stationed at Cherry Point, North Carolina."   (Def.'s Resp. to Pl.'s Mot. Summ. J. Aff. of Ramona Clark ¶ 6, ECF No. 35-1)   After returning to Ohio in 2008, Defendant contends that the delay was the result of Debtor's life happenings, including two marriages, two divorces and a child. (Aff. of Ramona Clark ¶ 10, ECF No. 35-1)   Debtor's affidavit concurs:   "My life has been so hectic that I did not have the deed prepared but I was not concerned since I believed that Defendant was the owner of the property."    (Aff. of Natalie Book ¶ 5, ECF No. 35-6) Trustee does not dispute these contentions but relies on the six years between Defendant's payment and the transfer as proof of the extraordinary nature of the transaction.   None of these facts are in dispute.

In Finn, the Sixth Circuit recognized that "a transaction can be in the ordinary course of affairs even if it is the first such transaction undertaken by the customer."   908 F.2d, 903, 908. The court then stated that "[t]his rule holds where the transaction would not be out of the ordinary course for a person in the borrower's position."   Id.   Although the court was determining whether the loan was incurred in the ordinary course of the debtor's financial affairs, the court sees no reason the same standard should not apply to a determination as to whether a transaction was ordinary between the parties.   When there is no history behind the relationship, the court needs a frame of reference.   Otherwise, any course of dealing in a first time transaction could be deemed ordinary.   Using this as the benchmark, the court cannot find for Defendant.

Six years is an extraordinary amount of time to wait to transfer the deed to Defendant.

10

The delay would not be ordinary for others in a similar situation. Although there is an explanation for the lack of a contemporaneous exchange, the inability to find time to execute and record a deed for nearly six years, including the three year period after Debtor returned to Ohio in 2008, cannot possibly qualify. And the fact that the catalyst for the transfer was Debtor's impending bankruptcy suggests that no one really cared until something was at stake. Kay v. Agripool, SRL (In re Murray), 392 B.R. 288 (B.A.P. 6th Cir. 2008) (recognizing that unusual collection activity can destroy ordinariness). The court rejects Defendant's argument that the transfer was in the ordinary course of Defendant and Debtor's dealings.

In a similar vein, the court cannot conclude that the transfer occurred under ordinary business terms. Defendant has offered nothing in support of a claim that the transfer would be considered normal by industry standards. Waiting six years after payment to transfer a deed is anything but ordinary.

Defendant's ordinary course defense fails.

### (iv)    New value defense

Defendant contends she advanced new value that must be recognized. She doesn't cite a code section or any law in support of her theory. She claims that her payment of the mortgage benefitted Debtor, and the estate, and she is entitled to some type of recoupment to prevent unjust enrichment. As Trustee points out, however, the mortgage is against her interest in the property only and does not affect Debtor's interest. Consequently, payment of the mortgage benefits only Defendant. Debtor's interest was free and clear.

As for entitlements to amounts for insurance and taxes, Trustee points out that her proof of claim does not include any amounts for these items. Defendant's failure to set forth any legal arguments to these amounts is fatal. Defendant's new value defense also fails.

## CONCLUSION

Trustee's complaint only specifically pled a count for a constructive fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B). Any attempts to now seek relief under an actual fraud theory, or under state law, are rejected.

Defendant successfully demonstrated that Debtor's transfer of the property was for reasonably equivalent value, thereby defeating Trustee's claim under 11 U.S.C. § 548(a)(1)(B). The court will grant Defendant's partial motion for summary judgment on the first count of the amended complaint.

Defendant advanced several arguments that the property transferred was subject to a trust for her benefit. She failed to demonstrate the existence of either an express trust or a resulting trust. The Sixth Circuit permits imposition of a constructive trust only in narrow circumstances, none of which are present here. Consequently, Defendant's arguments that Debtor held only bare

11

legal title at the time of the transfer fail.

Trustee proved that the Debtor's transfer of her one-half interest in the real estate was preferential. Defendant failed to advance any arguments to protect the preference from avoidance. Since the transfer occurred six years after Defendant paid Debtor, and the transfer was made in anticipation of bankruptcy, the court cannot find that the transfer was made in the ordinary course of business between the parties, nor according to ordinary business terms on a broader scale. Defendant's new value defense also fails. Any monies paid on the mortgage were for her sole benefit because the mortgage is against her interest only. Trustee's motion for summary judgment on the preference claim is well-taken and will be granted.

Defendant's motion for leave to amend her answer is untimely. Granting the motion for leave would change the course of this proceeding. Motions for summary judgment were pending when Defendant sought leave. To now stop the course would be prejudicial to Trustee. The court finds justice does not require this result. The motion for leave to amend the answer is denied.

An order will be entered immediately.

#          #          #

**Service List:**

Josiah L Mason
153 W Main St
PO Box 345
Ashland, OH 44805-2219

Brian J Chisnell
PO Box 2668
1075 National Parkway
Mansfield, OH 44906-1908

12